UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD and CONTINENTAL CASUALTY COMPANY, | ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| v. | ) ) | CIVIL ACTION Case No. 10-2532-CM-KMH |
| LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT OF LAFAYETTE, LA.  D/B/A LAFAYETTE UTILITIES SYSTEM | ) ) ) ) ) | |
| Defendant/Cross-Claim Defendant, | ) ) | |
| and | ) ) | |
| NATIONAL CABLE TELEVISION COOPERATIVE, INC., | ) ) ) | |
| Defendant/Counter-Claimant/ Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, | ) ) ) | |
| **SERVE: Commissioner of Insurance Kansas Insurance Department 420 SW 9th Street Topeka, KS 66612** | ) ) ) ) ) ) ) | |
| Third-Party Defendant. | ) ) | |

**NATIONAL CABLE TELEVISION COOPERATIVE, INC.'S FIRST AMENDED ANSWER TO COMPLAINT FOR DECLARATORY RELIEF, COUNTERLCAIMS, CROSS-CLAIM AND THIRD-PARTY COMPLAINT**

National Cable Television Cooperative, Inc. (hereinafter "NCTC"), for its First Amended

Answer, Counterclaims, Cross-Claim and Third-Party Complaint, hereby STATES, ADMITS, and

DENIES as follows:

CC 2322015v1

## ANSWER

1.      Answering Paragraph 1 of Plaintiffs' Complaint, NCTC ADMITS, upon information and belief, the allegations contained therein.

2.      Answering Paragraph 2 of Plaintiffs' Complaint, NCTC ADMITS, upon information and belief, the allegations contained therein.

3.      Answering Paragraph 3 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

4.      Answering Paragraph 4 of Plaintiffs' Complaint, NCTC ADMITS, upon information and belief, the allegations contained therein.

5.      Answering Paragraph 5 of Plaintiffs' Complaint, NCTC ADMITS that there is a real, substantial and justiciable issue in controversy, but DENIES that the insurers have accurately identified the scope and nature of the controversy;  STATES the insurers' repudiation of their duty to defend NCTC in the FCC Action was premature and in bad faith; STATES that the insurers' duty to defend NCTC in the FCC Action is a present, real and actual controversy; further STATES that the FCC Action was related to a separate lawsuit between Lafayette and NCTC styled National Cable Television Cooperative, Inc. v. Lafayette City-Parish Consolidated Government of Lafayette, Louisiana, et al., before this Court at Docket No. 10-2254-KHV-DJW ("the NCTC Lawsuit"); STATES that, given the interrelatedness of the FCC Action and the NCTC Lawsuit, this Court has Ordered, with agreement of Lafayette and NCTC, that discovery procured in the NCTC Lawsuit may be used for the defense of NCTC in the related FCC Action;[1] STATES that the duty to defend NCTC in the FCC Action encompasses discovery efforts in the NCTC Lawsuit to the extent such efforts are used to defend NCTC in the FCC Action;  STATES that NCTC

---

[1]  *See* Confidentiality Stipulation and Protective Order, Case 2:10-cv-02254-KHV-DWJ, Doc. 32, 10/18/10, p. 6, ¶ 8 (acknowledging that confidential discovery produced in the NCTC Lawsuit may be used in a related proceeding).

reserves the right to seek further defense from the insurers in the event Lafayette files additional or alternative claims against NCTC; and STATES that the separate issue of the insurers' duty to indemnify is premature, speculative and unfit for judicial decision and should be dismissed without prejudice; and otherwise DENIES the allegations contained in Paragraph 5 of Plaintiffs' Complaint.

6.     Answering Paragraph 6 of Plaintiffs' Complaint, NCTC ADMITS, upon information and belief, the allegations contained therein.

7.     Answering Paragraph 7 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

8.     Answering Paragraph 8 of Plaintiffs' Complaint, NCTC ADMITS, upon information and belief, the allegations contained therein and STATES that Lafayette disputes that the Court has proper personal jurisdiction.

9.     Answering Paragraph 9 of Plaintiffs' Complaint, NCTC ADMITS that the Court has the authority to issue a declaratory judgment and further necessary relief on the issue of the insurers' duties to defend NCTC in the FCC Action and otherwise DENIES the allegations contained in Paragraph 9 of Plaintiffs' Complaint.

10.     Answering Paragraph 10 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

11.     Answering Paragraph 11 of Plaintiffs' Complaint, NCTC ADMITS that there is a real, substantial and justiciable issue in controversy, but STATES that such controversy is limited to the issue of the insurers' duties to defend NCTC and the insurers' duty to indemnify is premature, speculative and unfit for judicial decision and should be stayed or dismissed without prejudice; and otherwise DENIES the allegations contained in Paragraph 11 of Plaintiffs' Complaint.

12.    Answering Paragraph 12 of Plaintiffs' Complaint, NCTC ADMITS that there is a real, substantial and justiciable issue in controversy, but STATES that such controversy is limited to the issue of the insurers' duties to defend NCTC and the insurers' duty to indemnify is premature, speculative and unfit for judicial decision and should be dismissed without prejudice; and otherwise DENIES the allegations contained in Paragraph 12 of Plaintiffs' Complaint.

13.    Answering Paragraph 13 of Plaintiffs' Complaint, NCTC ADMITS that there is a real, substantial and justiciable issue in controversy regarding the issue of the insurers' duties to defend NCTC; STATES that the insurers' duty to indemnify is premature, speculative and unfit for judicial decision and should be dismissed without prejudice; and otherwise DENIES the allegations contained in Paragraph 13 of Plaintiffs' Complaint.

14.    Answering Paragraph 14 of Plaintiffs' Complaint, NCTC DENIES that it is a cooperative; DENIES that its board of directors makes decisions to accept or not accept individual membership applications; and ADMITS the remaining allegations contained therein.

15.    Answering Paragraph 15 of Plaintiffs' Complaint, NCTC DENIES that it is a cooperative and that its volume discounts range from 15 to 20 percent in all cases; but otherwise ADMITS the general nature of the allegations contained in Paragraph 15 of Plaintiffs' Complaint.

16.    Answering Paragraph 16 of Plaintiffs' Complaint, NCTC DENIES that discounts are "passed on" to members or that members receive a "competitive advantage," but otherwise ADMITS the remaining allegations contained therein.

17.    Answering Paragraph 17 of Plaintiffs' Complaint, NCTC DENIES that it is a cooperative but otherwise ADMITS the remaining allegations contained therein.

18.    Answering Paragraph 18 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

A.     **The Underlying Action**

19.     Answering Paragraph 19 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

20.     Answering Paragraph 20 of Plaintiffs' Complaint, NCTC DENIES that its board of directors, when acting in their official capacity for NCTC, are also acting as representatives or agents of their respective employers; STATES that the Underlying Complaint alleges liability against the co-defendants solely in their purported capacity as the board members of NCTC, alleging they are "legally and actually responsible for NCTC's policies and actions;" STATES that the FCC Action misnamed corporate entities as defendants because NCTC's board of directors is comprised only of individuals who are elected from NCTC's membership; and otherwise ADMITS the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.     Answering Paragraph 21 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein and further STATES that Lafayette's allegations call into question whether the membership denial was discriminatory and/or disparaging to Lafayette's goods and services.

22.     Answering Paragraph 22 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein; STATES that Lafayette's allegations call into question whether the membership denial was discriminatory and/or disparaging to Lafayette's goods and services; and STATES that NCTC denies the allegations asserted by Lafayette in the Underlying Complaint.

23.     Answering Paragraph 23 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein; STATES that Lafayette's allegations call into question whether the membership denial was discriminatory and/or disparaging to Lafayette's goods and services; and STATES that NCTC denies any theory of liability asserted by Lafayette in the Underlying Complaint.

24.     Answering Paragraph 24 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein; STATES that Lafayette's allegations call into question whether the membership

denial was discriminatory and/or disparaging to Lafayette's goods and services; and STATES that NCTC denies the allegations asserted by Lafayette in the Underlying Complaint.

25.     Answering Paragraph 25 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein; STATES that Lafayette's allegations call into question whether the membership denial was discriminatory and/or disparaging to Lafayette's goods and services; and STATES that NCTC denies the allegations asserted by Lafayette in the Underlying Complaint.

26.     Answering Paragraph 26 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein; STATES that Lafayette's allegations call into question whether the membership denial was discriminatory and/or disparaging to Lafayette's goods and services; and STATES that NCTC denies the allegations asserted by Lafayette in the Underlying Complaint.

27.     Answering Paragraph 27 of Plaintiffs' Complaint, NCTC similarly STATES that its ADMISSIONS, DENIALS and STATEMENTS in response to Plaintiffs' Complaint in no way constitute NCTC's adoption, acceptance or admission of the truth of Lafayette's allegations in the Underlying Complaint.

**B.     The National Fire Policy**

28.     Answering Paragraph 28 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

29.     Answering Paragraph 29 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

30.     Answering Paragraph 30 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

31.     Answering Paragraph 31 of Plaintiffs' Complaint, NCTC ADMITS that the quoted definitions in Paragraph 31 appear in the policy and DENIES that all of the quoted definitions are relevant to this claim.

32.     Answering Paragraph 32 of Plaintiffs' Complaint, NCTC ADMITS that the quoted exclusion in Paragraph 32 appears in the policy and DENIES that the exclusion is relevant to this claim.

33.     Answering Paragraph 33 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein and STATES that any ambiguities in the insurance policy must be construed against Plaintiff National Fire Insurance Company of Hartford ("National Fire") in order to protect NCTC's reasonable expectations of coverage.

**C.     The Continental Casualty Policy**

34.     Answering Paragraph 34 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

35.     Answering Paragraph 35 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

36.     Answering Paragraph 36 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein.

37.     Answering Paragraph 37 of Plaintiffs' Complaint, NCTC ADMITS that the quoted definitions in Paragraph 37 appear in the policy and DENIES that all of the quoted definitions are relevant to this claim.

38.     Answering Paragraph 38 of Plaintiffs' Complaint, NCTC ADMITS that the quoted exclusions in Paragraph 38 appear in the policy and DENIES that the exclusions are relevant to this claim.

39.     Answering Paragraph 39 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein and STATES that any ambiguities in the insurance policy must be construed against Plaintiff Continental Casualty Company ("Continental") in order to protect NCTC's reasonable expectations of coverage.

7

D.     **Claims History**

40.     Answering Paragraph 40 of Plaintiffs' Complaint, NCTC STATES that its broker timely and properly tendered notice of this matter and otherwise ADMITS that NCTC's insurers timely received a copy of the Pre-Filed Complaint.

41.     Answering Paragraph 41 of Plaintiffs' Complaint, NCTC ADMITS that Plaintiffs disclaimed coverage by letter dated June 1, 2010; and STATES that the insurers' refusal to acknowledge even the potential for coverage was in bad faith.

42.     Answering Paragraph 42 of Plaintiffs' Complaint, NCTC STATES that its broker timely and properly tendered a copy of the Underlying Complaint to NCTC's insurers by e-mail dated June 16, 2010.

43.     Answering Paragraph 43 of Plaintiffs' Complaint, NCTC ADMITS the allegations contained therein and DENIES that Plaintiffs followed through with a good faith, full and fair investigation into, or consideration of, the claim under their policies.

44.     Answering Paragraph 44 of Plaintiffs' Complaint, NCTC ADMITS that the Plaintiffs denied coverage and STATES that the insurers' refusal to acknowledge even the potential for coverage was in bad faith.

## COUNT I
### (Declaratory Judgment)

45.     Answering Paragraph 45 of Plaintiffs' Complaint, NCTC incorporates by reference its STATEMENTS, ADMISSIONS and DENIALS to the preceding paragraphs, as if they were set out fully herein.

46.     Answering Paragraph 46 of Plaintiffs' Complaint, NCTC ADMITS that there is a real, substantial and justiciable issue in controversy regarding the insurers' duties to defend and STATES that the insurers' duty to indemnify is premature, speculative and unfit for judicial

decision and should be dismissed without prejudice; and otherwise DENIES the allegations contained in Paragraph 46 of Plaintiffs' Complaint.

47.     Answering Paragraph 47 of Plaintiffs' Complaint, NCTC DENIES that it has to prove the existence of coverage in order to establish the Plaintiffs' initial duty to defend and STATES that, so long as there is at least a remote potential for coverage, an insurer has a duty to defend its insured under Kansas law; STATES that Plaintiffs have a duty to defend NCTC because Lafayette's allegations create, at a minimum, the potential for liability covered by the "personal and advertising injury" provisions of one or both of Plaintiffs' policies; STATES that the insurers cannot ignore allegations, facts or evidence that, when coupled with the Underlying Action, trigger the insurers' duty to defend because of a potential for coverage; and otherwise DENIES the allegations contained in Paragraph 47 of Plaintiffs' Complaint.

48.     Answering Paragraph 48 of Plaintiffs' Complaint, NCTC DENIES the allegations contained therein and STATES that Plaintiffs' policies insure against a broader range of business liabilities.

49.     Answering Paragraph 49 of Plaintiffs' Complaint, NCTC DENIES that it presently seeks coverage under the "bodily injury" or "property damage" provisions of the policies; STATES that Plaintiffs have a duty to defend NCTC because, at a minimum, there is a potential for coverage under the "personal and advertising injury" provisions of one or both policies; and otherwise DENIES the allegations contained in Paragraph 49 of Plaintiffs' Complaint.

50.     Answering Paragraph 50 of Plaintiffs' Complaint, NCTC DENIES that it presently seeks coverage under the "bodily injury" or "property damage" provisions of the policies; STATES that Plaintiffs have a duty to defend NCTC because, at a minimum, there is a potential for coverage under the "personal and advertising injury" provisions of one or both policies; and otherwise DENIES the allegations contained in Paragraph 50 of Plaintiffs' Complaint.

51.    Answering Paragraph 51 of Plaintiffs' Complaint, NCTC DENIES that the insurers can reject their duty to defend under Kansas law based on the labels or legal theories pled by Lafayette so long as Lafayette's allegations nonetheless give rise to a potential theory of liability that is covered by one or both policies; STATES that the insurers cannot ignore allegations, facts or evidence that, when coupled with the Underlying Action, trigger the insurers' duty to defend because of a potential for coverage; and therefore DENIES the allegations contained in Paragraph 51 of Plaintiffs' Complaint.

52.    Answering Paragraph 52 of Plaintiffs' Complaint, NCTC DENIES the allegations contained therein.

53.    Answering Paragraph 53 of Plaintiffs' Complaint, NCTC DENIES the allegations contained therein.

54.    Answering Paragraph 54 of Plaintiffs' Complaint, NCTC DENIES the allegations contained therein.

55.    Answering Paragraph 55 of Plaintiffs' Complaint, NCTC DENIES the allegations contained therein.

56.    Answering Paragraph 56 of Plaintiffs' Complaint, NCTC DENIES the allegations contained therein.

57.    Answering Paragraph 57 of Plaintiffs' Complaint, NCTC DENIES that Plaintiffs are entitled to relief in their favor; STATES that the Court should enter a declaration that confirms that either National Fire or Continental has a duty to defend NCTC in the FCC Action; and STATES that the issue of any insurers' duty to indemnify is premature and not ripe for judicial determination and should be dismissed without prejudice.

58.    For further answer, NCTC STATES that Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

59.     For further answer, NCTC DENIES each and every allegation and averment of Plaintiffs' Complaint unless it is expressly ADMITTED herein.

## AFFIRMATIVE DEFENSES

NCTC, for its additional and further defenses to Plaintiffs' Complaint, STATES as follows:

60.     Plaintiffs' Complaint fails to state a claim upon which relief can be granted against NCTC.

61.     Plaintiffs' claims and/or defenses are barred by waiver, estoppel, laches and unclean hands.

62.     Plaintiffs' request for declaratory relief on the issue of the duty to indemnify is premature and not ripe for determination because the FCC Action is ongoing, thus NCTC's potential liability is speculative and the insurers' present duty to indemnify is highly speculative, rendering the indemnity issue is presently unfit for judicial decision and should be dismissed without prejudice.

63.     The scope of Plaintiffs' duty to defend may broaden if Lafayette asserts additional, changed or other claims or allegations against NCTC and NCTC reserves its rights, and does not waive any right, to seek defense for any and all claims potentially covered by the policies.

64.     Plaintiffs breached their contractual obligations to NCTC.

65.     Plaintiffs failed to mitigate their damages or losses.

66.     NCTC reserves the right to assert such other and further affirmative defenses of which it subsequently learns through discovery or otherwise.

WHEREFORE, having fully answered Plaintiffs' Complaint, NCTC prays that the Court deny Plaintiffs' request for declaratory relief on the premature indemnity issue; declare that either National Fire or Continental has a duty to defend NCTC in the FCC Action; and award NCTC its

costs, expenses and attorneys' fees incurred herein, based in part on K.S.A. § 40-256, and grant to NCTC such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS AGAINST NATIONAL FIRE AND CONTINENTAL

NCTC, for its Counterclaims against National Fire and Continental, hereby STATES and ALLEGES as follows:

## JURISDICITONAL ALLEGATIONS

1.      This is an insurance coverage action for declaratory relief, breach of contract and bad faith.

2.      National Fire is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois.  National Fire is authorized to conduct business in the State of Kansas.

3.      Continental is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois.  Continental is authorized to conduct the business of insurance in the State of Kansas

4.      NCTC is a not-for-profit corporation organized and existing under the laws of the State of Kansas, with its principal place of business in Lenexa, Kansas.

5.      The amount in controversy between NCTC and National Fire and Continental, as set forth more fully below, exceeds the sum or value of $75,000, exclusive of interests and costs.

6.      Federal jurisdiction exists for this counterclaim under 28 U.S.C. §§ 1332 and 1367.

7.      Venue is proper for this counterclaim under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8.      NCTC incorporates by reference its STATEMENTS, ADMISSIONS and DENIALS in the preceding paragraphs, as if they were set out at length herein.

9.     NCTC satisfied its obligations under each of the policies, including (but not limited to) full premium payment and timely notice of the underlying dispute.

10.     Alternatively, National Fire and Continental have waived any coverage defense based on non-payment of premium or failure to provide timely notice.

11.     National Fire issued a primary, first-layer policy to NCTC that provides "Businessowners Liability Coverage."

12.     Under National Fire's policy, National Fire has the "right and duty to defend" NCTC against "suits" seeking damages because of "personal and advertising injury" as defined by the policy.

13.     Pursuant to the insuring provisions of National Fire's policy, National Fire's duty to defend extends to suits based on groundless, false or fraudulent allegations.

14.     The amounts that National Fire owes in defense costs and expense are in addition to, and not subject to, the limits of its policy.

15.     National Fire's duty to defend is triggered so long as there is the potential for coverage under its policy.

16.     Relevant to the subject claims, National Fire's policy insures against "personal and advertising injury" arising out of the alleged disparagement of another organization's goods, products or services.

17.     Lafayette's allegations create the potential for disparagement liability and coverage under National Fire's policy because they call into question whether NCTC's actions and/or words somehow lowered Lafayette's rank and estimation in the cable market as a viable competitor.

18.     Continental – National Fire's parent company – also issued a policy to NCTC that acts as both excess and umbrella coverage for NCTC.

19.    To the extent a claim is covered by National Fire's policy, Continental provides excess coverage to NCTC and it has a duty to pay NCTC for its "ultimate net loss" in excess of National Fire's coverage, subject to a $10,000 retained limit.

20.    To the extent a claim is not covered by National Fire's policy, but is covered by Continental's policy, Continental provides primary coverage as an umbrella carrier.  In such instances, Continental must "investigate and defend" NCTC for "suits" alleging damages because of covered "personal and advertising injury."

21.    Continental's duty to defend as an umbrella carrier is triggered so long as there is the potential for coverage under its policy when there is no coverage under the underlying National Fire policy.

22.    Relevant to the subject claims, the umbrella policy is broader than the primary policy in that it additionally insures not only against allegations of disparagement, but also against allegations of discrimination against an organization.

23.    To the extent there is no potential for coverage under the National Fire policy (which NCTC denies), Continental still has the potential for coverage – and a duty to defend – under its broader umbrella policy because Lafayette alleges NCTC's actions were discriminatory.

24.    When Continental has duty to defend, "[c]osts and expenses of such investigation and defense are not subject to the 'retained limit'" of the policy.

25.    When Continental has a duty to defend, its duty to defend extends to suits based on groundless, false or fraudulent allegations.

26.    When Continental has a duty to defend, the amounts it pays in defense costs and expense are in addition to, and not subject to, the limits of its umbrella policy.

27.    Although NCTC has incurred and/or may incur substantial costs in defending the FCC Action, including defense costs exceeding $75,000 exclusive of interest and costs,

Continental has unjustifiably refused to defend NCTC in the absence of National Fire's duty to defend.

28.     National Fire and Continental have, in bad faith and consistent with their routine business practices, breached their contractual obligations to NCTC by:

> (a)     Failing to investigate NCTC's coverage claims in a timely manner or fairly;
>
> (b)     Refusing to accord any reasonable interpretation to the policy provisions and to accord any reasonable application of such provisions to the claims of NCTC;
>
> (c)     Refused to fully undertake the defense of NCTC;
>
> (d)     Refused to provide counsel to defend NCTC; and
>
> (e)     Refused to undertake the obligations to pay the costs incurred by NCTC in connection with its defense of the FCC Action.

29.     For each of the reasons enumerated above, Continental and National Fire both have rejected and/or repudiated and/or anticipatorily breached their duty to defend NCTC. NCTC is entitled to have the policies interpreted in a reasonable manner that maximizes its insurance coverage and protects NCTC's reasonable expectation of coverage.

## COUNT I :  DECLARATORY JUDGMENT FOR DEFENSE

30.     NCTC incorporates by reference the allegations contained in the preceding paragraphs, as if they were fully set forth herein.

31.     An actual and justiciable controversy exists regarding whether National Fire or Continental has a duty to defend NCTC in the FCC Action.

32.     NCTC thus seeks a necessary and appropriate judicial declaration by this Court that either National Fire or Continental has a duty to defend NCTC in the FCC Action because Lafayette's allegations could potentially expose NCTC to liability for "personal and advertising injury" arising out of alleged discrimination and/or disparagement.

## COUNT II:  BREACH OF DUTY TO DEFEND

33.    NCTC incorporates by reference the allegations contained in the preceding paragraphs, as if they were fully set forth herein.

34.    NCTC has incurred, or will incur in the future, damages arising out of the National Fire and Continental's refusal to defend NCTC in the FCC Action.

35.    As a direct and proximate result of the insurers' breaches, National Fire and Continental are liable to NCTC for damages in an amount in excess of $75,000 for all costs of defense and other sums incurred to date by NCTC, or which may be incurred, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees and costs, based in part on K.S.A. 40-256, pre- and post-judgment interest, other consequential damages, punitive damages in such sum as the fact finder determines to be fair and reasonable under the circumstances and which will serve to punish National Fire and Continental and deter them from similar conduct in the future, and any such other relief that the Court deems just and proper.

## COUNT III:  BAD FAITH / REACH OF DUTY OF GOOD FAITH AND FAIR DEALING

36.    NCTC incorporates by reference the allegations contained in the preceding paragraphs, as if they were fully set forth herein.

37.    Insurers have a fiduciary obligation to act fairly and in good faith under the policies that they issue to their insureds.

38.    National Fire and Continental have acted in bad faith and breached their duty of good faith and fair dealing.

39.    As a direct consequence of their bad faith, NCTC has incurred damages and substantial attorneys' fees and costs.

16

40.     As a direct and proximate result of the breach of their duty of good faith and fair dealing, National Fire and Continental are liable to NCTC for damages in excess of $75,000 for all costs of defense and other sums incurred to date by NCTC, or which may be incurred, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees and costs, based in part on K.S.A. 40-256, pre- and post-judgment interest, other consequential damages, punitive damages in such sum as the fact finder determines to be fair and reasonable under the circumstances and which will serve to punish Continental and deter it from similar conduct in the future, and any such other relief that the Court deems just and proper.

**<u>PRAYER FOR RELIEF AGAINST NATIONAL FIRE AND CONTINENTAL</u>**

WHEREFORE, NCTC respectfully prays for a judgment against National Fire and Continental for the following:

(a)     A declaration that either National Fire or Continental has a primary, first-dollar duty to defend NCTC in the FCC Action;

(b)     An Order requiring National Fire and/or Continental to pay all reasonable defense fees and costs incurred in the FCC Action;

(c)     Pre-judgment and post-judgment interest based upon and added to the damages as allowed by law;

(d)     Attorneys' fees and costs associated with this action, based in part on K.S.A. 40-256;

(e)     Other consequential damages, if applicable;

(f)     Punitive damages in such sum as the fact finder determines to be fair and reasonable under the circumstances and which will serve to punish National Fire and Continental and deter them from similar conduct in the future;

(g)    Such other and further relief to which NCTC may be entitled or as the Court may

deem just and proper.

## DEMAND FOR JURY TRIAL

NCTC hereby demands a trial by jury on all issues so triable.

## THIRD-PARTY COMPLAINT AGAINST TRAVELERS

NCTC, for its Third-Party Complaint against Travelers Casualty & Surety Company of

America ("Travelers"), hereby STATES and ALLEGES as follows:

## JURISDICITONAL ALLEGATIONS

1.    This is an insurance coverage action for declaratory relief, breach of contract and

bad faith.

2.    Travelers is an insurance company organized and existing under the laws of the

State of Connecticut, with its principal place of business in the State of Connecticut.  Travelers is

authorized to conduct business in the State of Kansas.

3.    NCTC is a not-for-profit corporation organized and existing under the laws of the

State of Kansas, with its principal place of business in Lenexa, Kansas.

4.    The amount in controversy between NCTC and Travelers, as set forth more fully

below, exceeds the sum or value of $75,000, exclusive of interests and costs.

5.    Federal jurisdiction exists for this third-party claim under 28 U.S.C. § 1332 and

1367.

6.    Venue is proper for this counterclaim under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

7.    NCTC incorporates by reference its STATEMENTS, ADMISSIONS and

DENIALS in the preceding paragraphs, as if they were set out at length herein.

8.      At all times relevant to this matter, Travelers provided Private Company Directors and Officers Liability coverage to NCTC and its Board of Directors ("the D&O policies").

9.      The D&O policies provide defense and liability coverage to NCTC's Board of Directors (or to NCTC to the extent it indemnifies its Board of Directors) for a variety of claims, including claims alleging antitrust violations, unfair methods of competition and/or deceptive acts and practices in trade and commerce.

10.     The FCC Action alleges, among other things, antitrust violations, unfair methods of competition and/or deceptive acts and practices in trade and commerce.  The FCC Action alleges such claims against NCTC and numerous co-defendants solely in their purported capacity as the Board members of NCTC, claiming that the Board co-defendants are "legally and actually responsible for NCTC's policies and actions."  The FCC Action mis-named corporate entities as defendants because NCTC's board of directors is comprised only on of individuals who are elected from NCTC's membership.

11.     NCTC satisfied its obligations under the D&O policies, including (but not limited to) full premium payment and timely notice of the FCC Action to Travelers.  Alternatively, Travelers has waived any coverage defense based on non-payment of premium or failure to provide timely notice.

12.     Although NCTC and/or its Board of Directors has incurred and/or may incur substantial costs in defending the FCC Action, including defense costs exceeding $75,000 exclusive of interest and costs, Travelers has in bad faith refused to defend NCTC and/or its Board of Directors.

13.     Travelers has, in bad faith and consistent with its routine business practices, breached its obligations as set forth in the D&O policies sold to NCTC.  Specifically, Travelers has:

(a)    Failed to investigate NCTC's coverage claims in a timely manner or fairly;

(b)    Refused to accord any reasonable interpretation to the provisions in the D&O Policies, and refused to accord any reasonable application of such provisions to the claims of NCTC;

(c)    Refused to fully undertake the defense of NCTC and/or its Board of Directors in the FCC Action;

(d)    Refused to provide counsel to defend NCTC and/or its Board of Directors in the FCC Action; and

(e)    Refused to undertake the obligations to pay the costs incurred by NCTC and/or its Board of Directors in connection with defending the FCC Action.

14.    For each of the reasons enumerated above, Travelers has rejected and/or repudiated and breached its duty to defend NCTC and/or its Board of Directors.

15.    NCTC is entitled to have the D&O policies interpreted in a reasonable manner that maximizes its insurance coverage and protects its reasonable expectations of coverage.

## COUNT I :  DECLARATORY JUDGMENT FOR DEFENSE

16.    NCTC incorporates by reference the allegations contained in the preceding paragraphs, as if there were fully set forth herein.

17.    An actual and justiciable controversy exists between NCTC and Travelers regarding Travelers' obligation to pay defense costs in connection with the FCC Action.

18.    NCTC thus seeks a judicial declaration by this Court of Travelers' obligation to defend NCTC and/or its Board of Directors with respect to the FCC Action.  For the foregoing reasons, such a judicial declaration is necessary and appropriate.

## COUNT II:  BREACH OF THE DUTY TO DEFEND

19.    NCTC incorporates by reference the allegations contained in the preceding paragraphs, as if there were fully set forth herein.

20.    NCTC has incurred, or will incur in the future, damages arising out of Travelers' refusal to defend NCTC and/or its Board of Directors in the FCC Action.

21.     As a direct and proximate result of this breach, Travelers is liable to NCTC and/or its Board of Directors for damages in excess of $75,000 for all costs of defense and other sums incurred to date by NCTC and/or its Board of Directors, or which may be incurred, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees and costs, based in part on K.S.A. 40-256, pre- and post-judgment interest, other consequential damages, punitive damages in such sum as the fact finder determines to be fair and reasonable under the circumstances and which will serve to punish Travelers and deter it from similar conduct in the future, and any such other relief that the Court deems just and proper.

## COUNT III:  BAD FAITH/ BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

22.     NCTC incorporates by reference the allegations contained in the preceding paragraphs, as if they were fully set forth herein.

23.     Travelers owes a fiduciary obligation to NCTC and/or its Board of Directors and has a duty to act in good faith and fair dealing under the D&O policies that it sold to NCTC.

24.     Travelers has acted in bad faith by refusing to defend NCTC and/or its Board of Directors in the FCC Action and its actions and omissions constitute a breach of its duty of good faith and fair dealing under the D&O policies.

25.     As a direct consequence of Travelers' breach of its duty of good faith and fair dealing, NCTC and/or its Board of Directors has incurred damages and substantial attorneys' fees and costs.

26.     As a direct and proximate result of the Travelers' breach of its duty of good faith and fair dealing, Travelers is liable to NCTC for damages in excess of $75,000 for all costs of defense and other sums incurred to date by NCTC, or which may be incurred, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees and

costs, based in part on K.S.A. 40-256, pre- and post-judgment interest, other consequential damages, punitive damages in such sum as the fact finder determines to be fair and reasonable under the circumstances and which will serve to punish Travelers and deter it from similar conduct in the future, and any such other relief that the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, NCTC respectfully prays for a judgment against Travelers for the following:

a.  A declaration that Travelers is obligated to defend NCTC and/or its Board of Directors under the D&O policies with respect to the FCC Action;

b.  An Order requiring Travelers to pay the reasonable fees and costs incurred in the defense of NCTC's Board of Directors in the FCC Action;

c.  Pre-judgment and post-judgment interest based upon and added to the damages as allowed by law;

d.  Attorneys' fees and costs associated with this action, based in part on K.S.A. 40-256;

e.  Other consequential damages, if applicable;

f.  Punitive damages in such sum as the fact finder determines to be fair and reasonable under the circumstances and which will serve to punish Travelers and deter it from similar conduct in the future; and

g.  Such other and further relief to which NCTC and/or its Board of Directors may be entitled or as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

NCTC hereby demands a trial by jury on all issues so triable.

## CROSS-CLAIM AGAINST LAFAYETTE

NCTC, for its Cross-Claim against Lafayette City-Parish Consolidated Government of Lafayette, LA. D/B/A/ Lafayette Utilities System ("Lafayette"), hereby STATES and ALLEGES as follows:

## JURISDICITONAL ALLEGATIONS

1.      This is an action for breach of contract and declaratory relief to enforce a "hold harmless" agreement executed by Lafayette.

2.      Lafayette is a publicly owned entity organized and existing under the laws of the State of Louisiana.  Lafayette has its principal place of business in Lafayette City-Parish, Louisiana.

3.      NCTC is a not-for-profit corporation organized and existing under the laws of the State of Kansas, with its principal place of business in Lenexa, Kansas.

4.      The amount in controversy between NCTC and Lafayette, as set forth more fully below, exceeds the sum or value of $75,000, exclusive of interests and costs.

5.      Federal jurisdiction exists for this cross-claim under 28 U.S.C. §§ 1332 and 1367.

6.      Venue is proper for this counterclaim under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

7.      NCTC incorporates by reference its STATEMENTS, ADMISSIONS and DENIALS in the preceding paragraphs, as if they were set out at length herein.

8.      On August 3, 2004, Steve Creeden sent an e-mail to NCTC indicating that he represented Lafayette and declaring that Lafayette was interested in joining NCTC.

9.      Over the next six years, Lafayette initiated multiple contacts and communications with NCTC and voluntarily participated in a multi-step application process in pursuit of its effort to become a voting member of NCTC, a Kansas corporation.  Lafayette purposefully directed

these communications into Kansas in order to consummate its membership transaction with NCTC.

10.    Lafayette's communications with NCTC addressed topics including, but not limited to, the application process for joining NCTC, Lafayette's payment of the application fee, Lafayette's eligibility for membership, documents requested by Lafayette, NCTC's membership fees, programming services and NCTC's denial of Lafayette's membership application as well as Lafayette's threatened actions arising therefrom.

11.    Lafayette also transmitted documents to NCTC's Kansas headquarters including, but not limited to, a qualification questionnaire, a signed confidentiality agreement, a 356-page membership application and, after Lafayette's application was declined, one or more letters demanding reconsideration and threatening legal action (along with a lengthy draft pleading), as part of Lafayette's continued effort to secure membership in NCTC.

12.    All of Lafayette's communications with NCTC were part of Lafayette's overall effort to reach a business deal and enter a contract with NCTC, a Kansas corporation, and to gain an economic benefit.

13.    All communications and documents from Lafayette were directed to NCTC representatives in Lenexa, Kansas, and all communications from NCTC to Lafayette were made or sent from Lenexa, Kansas.

14.    When Lafayette applied for membership with NCTC, its Director of Utilities Terry Huval ("Huval") signed an "Applicant Agreement / Acknowledgment" on July 23, 2009 ("the Agreement").  The Agreement was delivered to NCTC's Kansas headquartered as part of Lafayette's membership application, along with payment of Lafayette's $1500 application fee.

15.     In the Agreement, Huval acknowledged that he was "authorized to sign this Application on behalf of Applicant and to bind Applicant to the above representations, terms and conditions contained herein."

16.     Under the Agreement signed by Huval, Lafayette broadly "agrees to hold NCTC harmless and waives all claims and damages against NCTC in the event [Lafayette] is denied NCTC membership or is otherwise determined by NCTC to be ineligible."

17.     After executing the Agreement, Lafayette filed the FCC Action, in breach of its agreement to waive all claims and damages against NCTC arising out of the denial of Lafayette's membership application.

18.     The FCC Action has directly and proximately caused NCTC to incur defense costs in the FCC Action and this action.

19.     NCTC's defense costs have exceeded $75,000 exclusive of interest and costs and NCTC continues to incur defense costs.

20.     Lafayette is contractually obligated to hold harmless NCTC for its defense costs and any damages arising out of the FCC Action and this action because they are the direct and proximate result of Lafayette's breach of the waiver provision of the Agreement.

21.     NCTC tendered the defense of the FCC Action and this action to Lafayette on November 12, 2010.

22.     On December 13, 21010 Lafayette rejected NCTC's tender and refused to undertake the obligation to hold harmless NCTC for the costs incurred by NCTC in connection with defending these suits.

23.     On December 13, 2010, Lafayette denied that the waiver and hold harmless agreement is enforceable.

25

24.     Lafayette is in breach of the waiver and hold harmless provisions of the Agreement.

25.     To the extent NCTC's insurers defend and/or indemnify NCTC in the FCC Action, they may have a claim for subrogation against Lafayette pursuant to the terms of their policies and/or by operation of law.

### COUNT I:  DECLARATION AS TO "HOLD HARMLESS' CONTRACT

26.     NCTC incorporates by reference the allegations contained in the preceding paragraphs, as if they were fully set forth herein.

27.     There is a real, substantial and justiciable issue in controversy between the parties regarding the enforceability of the waiver and hold harmless agreement and Lafayette's obligation to hold harmless NCTC for the defenses costs and any damages it has been forced to incur, or will incur, in the FCC Action or this lawsuit, which necessarily arise out of Lafayette's breach of the waiver agreement following NCTC's denial of Lafayette's membership application.

28.     A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because NCTC has no adequate remedy at law that will resolve the current controversy.

### COUNT II:  BREACH OF "HOLD HARMLESS' CONTRACT

29.     NCTC incorporates by reference the allegations contained in the preceding paragraphs of its Answer, Counterclaim, Third-Party Complaint and Cross-Claim, as if they were fully set forth herein.

30.     NCTC has incurred, or will incur in the future, damages arising out of Lafayette's breach of the waiver agreement and its refusal to hold harmless NCTC for the costs incurred by NCTC in connection with the FCC Action and this lawsuit.

31.    As a direct and proximate result of these breaches, Lafayette is liable to NCTC for damages in an amount in excess of $75,000, for all costs of defense and other sums incurred to date, and which may be incurred in the future, by NCTC in the FCC Action or in this lawsuit, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees and costs, pre- and post-judgment interest, other consequential damages and any such other relief that the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, NCTC respectfully prays for a judgment against Lafayette for the following:

a.    A declaration that Lafayette is in breach of the waiver provision of the parties Agreement;

b.    A declaration that Lafayette is obligated to hold harmless NCTC for its defense costs and damages incurred as a result of Lafayette's breach of the waiver provision, including the costs and damages incurred by NCTC in the FCC Action and this lawsuit;

c.    An Order requiring Lafayette to pay the reasonable fees, costs and damages incurred by NCTC in the FCC Action and this lawsuit;

d.    Pre-judgment and post-judgment interest based upon and added to the damages as allowed by law;

e.    Attorneys' fees and costs associated with this action;

f.    Other consequential damages, if applicable; and

g.    Such other and further relief to which NCTC may be entitled or as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

NCTC hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

LATHROP & GAGE LLP


By:  /s/ *David T. M. Powell*
    J. A. Felton       KS Bar #70020
    David T.M. Powell   KS Bar #16474
    Robyn L. Anderson   KS Bar #20002
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108-2618
    Telephone:  (816) 292-2000
    Telecopier:  (816) 292-2001
    ATTORNEYS FOR NATIONAL CABLE
    TELEVISION COOPERATIVE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was served via the Court's CM/ECF system on the following counsel of record this 23rd day of December, 2010:

Barry W. McCormick
Kim J. Poirier
McCormick, Gordon, Bloskey & Poirier
70 Corporate Woods
9900 W. 109th Street, Suite 150
Overland Park, Kansas 66210
*Local Counsel for Plaintiffs*
**NATIONAL FIRE INSURANCE OF HARTFORD and**
**CONTINENTAL CASUALTY COMPANY**

Of Counsel:
Kristin V. Gallagher
Jonathan A. Messier
Carroll, McNulty & Kull LLC
120 Mountain View Blvd.
Basking Ridge, New Jersey 07920
*Counsel for Plaintiffs*
**NATIONAL FIRE INSURANCE OF HARTFORD and**
**CONTINENTAL CASUALTY COMPANY**

Lauren E. Tucker McCubbin
Polsinelli Shughart PC - 12th St.
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, MO 64105-1929
816-421-3355
Fax: 816-374-0509
Email: ltucker@polsinelli.com
*Counsel for Defendant*
**LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT OF**
**LAFAYETTE, LA. D/B/A LAFAYETTE UTILITIES SYSTEM**

Additionally, a hardcopy of the above and foregoing will be served with process as follows:
TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA
**SERVE:**
**Commissioner of Insurance**
**Kansas Insurance Department**
**420 SW 9th Street**
**Topeka, KS 66612**

/s/  David T.M. Powell
Attorneys for National Cable Television Cooperative, Inc.

29