## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION ) ) Case No. 10-2532 -CM |
| NATIONAL CABLE TELEVISION COOPERATIVE, INC., et al., | ) ) ) |
| Defendants. | ) ) ) |

### MEMORANDUM AND ORDER

Two insurance companies filed this declaratory judgment action against their insured, defendant National Cable Television Cooperative, Inc. ("NCTC"), and NCTC's adversary in other legal actions, defendant Lafayette City-Parish Consolidated Government of Lafayette, LA ("Lafayette"). NCTC and Lafayette are adversaries in an action pending before the Federal Communications Commission ("FCC") and, until November 2010, were adversaries in another declaratory judgment action pending before Judge Vratil in the District of Kansas. NCTC requested that the insurance companies defend it in both actions, and the insurance companies filed the instant action. The case is now before the court on the Motion to Dismiss (Doc. 14) filed by defendant Lafayette City-Parrish Consolidated Government of Lafayette, Louisiana. Defendant Lafayette claims that the court lacks personal jurisdiction over it.

### FACTUAL BACKGROUND

The following facts are taken from the exhibits attached to the parties' motion and briefs, including an affidavit signed by Scott Abbott, which the court considers under the doctrine of judicial notice, as it was filed in Judge Vratil's case. The facts are viewed in the light most

favorable to the non-moving party.

Defendant Lafayette, a political subdivision of Louisiana, is a publicly-owned multichannel video programming distributor. Defendant NCTC operates as a Kansas not-for-profit corporation that has member companies. Its headquarters and principal place of business are in Lenexa, Kansas. Companies must apply to join NCTC's group. For its members, NCTC operates as a programming and hardware purchasing organization and negotiates master agreements and coordinates payments between its members and programming networks, generating discounts for its members.

Through a consultant, Lafayette learned of NCTC. On August 3, 2004, a representative of Lafayette, Steve Creeden,[1] emailed NCTC, indicating that Lafayette would like to join NCTC's cooperative. On September 6, 2004, Mr. Creeden called Beth Eland, Manager of Membership Affairs with NCTC, to express Lafayette's interest in joining NCTC. Sometime that fall, Ms. Eland sent the consultant a number of emails containing information about NCTC. Later that year, Ms. Eland notified the consultant that NCTC was instituting a moratorium on accepting new members, which remained in place until December 2008. After NCTC lifted the moratorium, on December 10, 2008, Lafayette's agent again contacted NCTC about potential membership. Ms. Eland then contacted Lafayette's agent, Mary Jones, on the last day of December.

In January 2009, Lafayette sent a completed Qualifications Questionnaire to NCTC in Kansas. In the following months, the companies exchanged e-mails about documentation required to apply for membership. Specifically, the record identifies the following contacts:

- February 26, 2009: Heather Escott of Lafayette contacted Ms. Eland by phone and email to request an update on NCTC's consideration of Lafayette's application.

---

[1] It is unclear whether Mr. Creeden is also the consultant.

- April 27, 2009: Ms. Escott phoned Ms. Eland to request additional membership documents. Ms. Eland responded by email.
- May 12, 2009: Michael Herbert, Lafayette's counsel, called Ms. Eland and left a message regarding the documents required.
- May 26, 2009: In response to a request by Ms. Eland, Mr. Herbert sent her an email identifying Lafayette's issues regarding required documents.
- Between June and July 2009: the companies exchanged additional emails.

Lafayette ultimately submitted a membership application and a $1,500 application fee to NCTC in late July/early August 2009. The application was 356 pages, broken out as follows: (1) 12-page application; (2) 272 pages of financials; (3) 49 pages of bond information; and (4) 23 pages of supporting documents. Between September 2009 and February 2010, Ms. Escott contacted NCTC by email or phone on at least seven occasions referencing the status of Lafayette's membership application. In early February 2010, NCTC notified Lafayette that NCTC was rejecting Lafayette's membership application. Between February 2010 and June 2010, counsel for Lafayette and other representatives sent at least thirteen emails, initiated at least fifteen phone calls, and mailed at least one letter to NCTC. All of these forms of communication were directed to Kansas.

On April 21, 2010, Lafayette sent NCTC a pre-filing notice letter, indicating that Lafayette and two other municipalities intended to file a complaint with the FCC against NCTC. NCTC responded by filing a declaratory judgment action in the District of Kansas on April 30, 2010. That case has since been dismissed. Lafayette then filed its complaint with the FCC on June 8, 2010.

Lafayette and NCTC do not have a contract, and NCTC has never granted Lafayette membership in its organization. As previously mentioned, NCTC has requested that its insurance carriers defend and indemnify it against the FCC action and any potential counterclaims in the

earlier declaratory judgment action (but Lafayette never filed counterclaims in that action). Lafayette is not a party to the insurance contracts that are the subject of the instant action.

## PERSONAL JURISDICTION

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988); *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). To demonstrate personal jurisdiction sufficient to defeat a motion to dismiss, a plaintiff need only make a prima facie showing that jurisdiction exists. *Ten Mile Indus. Park v. W. Plains Serv. Co.*, 810 F.2d 1518, 1524 (10th Cir. 1987); *Union Pac. R.R. Co. v. Pratt & Tobin, P.C.*, No. 99-2030-KHV, 1999 WL 760417, at *2 (D. Kan. Sept. 21, 1999). "In ascertaining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by defendant's affidavits." *Ten Mile Indus. Park*, 810 F.2d at 1524. However, the plaintiff has the "duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res. Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The complaint and any affidavits submitted are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff. *Kuenzle v. HTM Sport-Und Freizeigerate AG*, 102 F.3d 453, 456 (10th Cir. 1996); *Fed. Deposit*, 959 F.2d at 174.

In analyzing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court must determine whether the defendant's conduct falls within one of the provisions of the Kansas long-arm statute, Kan. Stat. Ann. § 60-308, and whether the exercise of jurisdiction would offend the constitutional guarantee of due process. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). However, "these inquiries are for all intents and purposes the same because the Kansas long-arm statute . . . has been liberally construed by the Kansas courts to assert personal

jurisdiction to the full extent permitted by the due process clause." *Flannagan v. Bader*, 905 F. Supp. 933, 936 (D. Kan. 1995). Therefore, the court proceeds directly to the constitutional inquiry. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citation omitted); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994).

There are two ways to achieve the constitutional "minimum contacts" standard. *OMI Holdings*, 149 F.3d at 1090. Only one is relevant in this case: specific jurisdiction. A court may exercise specific jurisdiction over a nonresident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or are related to those activities." *Id.* at 1090–91 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987)).

To determine whether specific jurisdiction is appropriate, the court must first decide whether the defendant has such minimum contacts within the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, the court must then consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal*, 480 U.S. at 113. This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005).

### *Minimum Contacts*

The minimum contacts standard requires (1) that the out-of-state defendant "purposefully directed" its activities at residents of the forum state, and (2) that the plaintiff's injuries "arise out of" defendant's forum-related activities. *Burger King*, 471 U.S. at 472; *Dudnikov v. Chalk &*

*Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *Value Chain Solutions, LLC v. Quality One Wireless, LLC*, No. 09-2586-JAR, 2010 WL 1643690, at *2 (D. Kan. Apr. 20, 2010). The shared aim of the "purposeful direction" doctrine is to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state. *Burger King*, 471 U.S. at 475; *Dudnikov*, 514 F.3d at 1071. Ultimately, the court must ascertain whether the defendant's connection with the state and conduct are such that defendant should "'reasonably anticipate being haled into court there.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

The communication between defendants Lafayette and NCTC loosely spanned nearly five years, although the majority of it took place over the course of nine months. The topic was singular: defendant Lafayette's desire to become a member of NCTC's programming group. Defendant Lafayette never entered the state of Kansas, but initiated a number of emails and phone calls during that period.[2]

While the parties never entered into a contract, defendant Lafayette aggressively sought membership in a group whose headquarters were in Kansas. To that end, defendant Lafayette submitted a substantial, lengthy document and then followed up repeatedly on the progress of its application. When defendant Lafayette's application was denied, its attorney sent a notice of possible litigation—again, to Kansas.

All of these contacts and communications form the basis for the FCC action (and the dismissed declaratory judgment action) that was the impetus for the instant declaratory judgment

---

[2] It is possible that, as defendant Lafayette suggests, the "vast majority" of its communications with NCTC were responsive to requests from NCTC, but the court cannot assume that fact at this stage of the litigation. Rather, plaintiffs receive the benefit of all inferences, and the court assumes from the evidence presented that defendant Lafayette initiated the contacts in an effort to further its desire to become associated with NCTC.

-6-

action. All of the contacts and communications arise out of defendant Lafayette's desire to be associated with a Kansas company. The court understands defendant Lafayette's position that it does not intend to offer *services* in Kansas; however, defendant Lafayette chose to engage in attempted dealings with a Kansas corporation. Having made that choice, defendant Lafayette cannot now claim that it had no idea that electing to work with a Kansas corporation would potentially subject it to the jurisdiction of the state of Kansas.

After considering the facts in the complaint and supporting affidavits in the light most favorable to plaintiffs, the court determines that plaintiffs have made a prima facie showing that defendant Lafayette purposefully directed its activity at Kansas. Plaintiffs have shown that it is reasonable for defendant Lafayette to expect that it would be haled into Kansas court if a dispute involving its membership application developed.

### *Traditional notions of fair play and substantial justice*

The court next turns to whether asserting personal jurisdiction over defendant Lafayette would offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). This turns on whether it is reasonable for the court to exercise personal jurisdiction. *OMI Holdings*, 149 F.3d at 1091. An "interplay exists between the two components [of the specific jurisdiction inquiry], such that, 'depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.'" *Id.* at 1091–92 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)); *see Pro Axess*, 428 F.3d at 1280 ("[T]he analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to

defeat jurisdiction.").

In evaluating the second component of specific jurisdiction, the court considers "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings*, 149 F.3d at 1095 (citing *Asahi Metal*, 480 U.S. at 113). If these factors are strong, they may establish jurisdiction even though the minimum contacts are minor. *Id.*

With respect to the first factor, defendant Lafayette is based in Louisiana, all of its employees and potential witnesses are based in Louisiana, and defending a suit in Kansas would undoubtedly burden it. However, "[d]efending a suit in a foreign jurisdiction is not as burdensome as in the past." *Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982) (citing *Hanson v. Denckla*, 357 U.S. 235, 250–51 (1958)); *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008) ("[M]odern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engaged in economic activity."). Moreover, the nature of this case is not such that defendant Lafayette is a "main player." At its crux, this dispute is between the insurers and the insured. Defendant Lafayette is merely involved as a result of its underlying litigation with the insured. This factor is neutral.

With respect to the second and third factors, Kansas has a fairly strong interest in adjudicating this controversy because NCTC is a Kansas corporation, the policies were sold in Kansas, and Kansas substantive law will likely be involved. This interest is not diminished by the fact that plaintiffs brought the case as a declaratory judgment action—an action that the court has discretion whether to hear. Plaintiffs have an interest in receiving convenient and effective relief,

and it appears that relief can best be achieved in Kansas. This factor weighs in favor of plaintiffs.

With respect to the fourth factor, the court evaluates whether Kansas would best further the interstate judicial system's interest in obtaining efficient resolution of controversies. *Id.* In evaluating this factor, courts look at the location of witnesses, the location of the underlying wrong, what forum's law applies, and "whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* The first consideration favors plaintiffs because it appears that principal witnesses will be located at NCTC's headquarters in Kansas. The second consideration also favors plaintiffs because the alleged wrong occurred in Kansas; NCTC made the decision to deny Lafayette's application in Kansas, although Lafayette felt the impact in Louisiana. The third consideration favors plaintiffs because in the insurance dispute—which is the subject of this case—it is likely that Kansas law will apply. *Dow Chem. Corp. v. Weevil-Cide Co.*, 630 F. Supp. 125, 127 (D. Kan. 1986) (stating that "[i]n a diversity action . . . a federal court must apply the choice of law rules of the forum state."); *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141, 1145 (D. Kan. 1999) ("For purposes of contract construction, Kansas follows the theory of lex loci contractus—the place of the making of the contract controls. Under this approach, the court looks to where the last act necessary for the creation of the contract takes place, and that state's law controls."). The final consideration does not strongly favor either party. The court is aware that the underlying case is before the FCC, making it nearly impossible to avoid "piecemeal litigation," regardless of the location that plaintiffs brought this insurance coverage action. Overall, the court finds that the interstate judicial system's interest may be best served by litigating the dispute in Kansas.

With respect to the fifth factor, the court focuses on whether exercising jurisdiction in Kansas would affect "the substantive social policy interests of other states or foreign nations." *OMI Holdings*, 149 F.3d at 1097. There appears to be no relevant application of this factor to the instant

case, rendering this factor neutral.

After evaluating the relevant factors, the court finds that plaintiffs have made a prima facie showing that exercising personal jurisdiction over defendant Lafayette would not offend traditional notions of fair play and substantial justice. Exercising specific jurisdiction over defendant Lafayette in Kansas is reasonable given the extent of defendant Lafayette's contacts with Kansas compared to the relative weights of the reasonableness factors. Although defendants Lafayette and NCTC never entered into a contract, the contacts surrounding the application process were fairly extensive. Even if the court found a reasonableness factor to weigh in favor of defendant Lafayette, it would not be strong enough to overcome defendant Lafayette's contacts with Kansas. Plaintiffs have established a prima facie case of personal jurisdiction over defendant Lafayette.

As a final note, defendant Lafayette repeatedly emphasizes that the issue in this case is *not* whether the denial of its membership application was appropriate. Instead, defendant Lafayette claims that the issue here—and the issue the court should be considering when deciding whether to assert jurisdiction over defendant Lafayette—is whether defendant NCTC's insurance applies. To some extent, this is true; the ultimate issue before the court is whether the insurance companies have a duty to defend and/or indemnify defendant NCTC. But the ultimate issue is not before the court at the moment. The immediate issue is whether the court can assert personal jurisdiction over defendant Lafayette. Resolution of this issue requires analysis of the facts of the underlying case. *See St. Paul Surplus Lines Ins. Co. v. Int'l Playtex, Inc.*, 777 P.2d 1259, 1264 (Kan. 1989) ("Playtex argues that the current claim does not arise out of the use of its products sold in this state, but rather out of an insurance contract between nonresident corporations which have no connection to the State of Kansas. K.S.A. 1988 Supp. 60-308 is to be liberally construed. It was not error for the trial court to find that the declaratory judgment action was sufficiently connected to the sale of Playtex

products in Kansas to warrant personal jurisdiction over Playtex. . . .  The plaintiff insurers' claim for an insurance coverage determination lies in the wake of the commercial activities of Playtex in Kansas.").  Like in *St. Paul*, the relevant contacts here are those in the underlying suit; not in the insurance action.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. 14) filed by defendant Lafayette City-Parrish Consolidated Government of Lafayette, Louisiana is denied.

Dated this 14th day of April 2011, at Kansas City, Kansas.

>  **s/ Carlos Murguia**
>  **CARLOS MURGUIA**
>  **United States District Judge**